This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-36246**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**LARSON BROWN,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Karen L. Townsend, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Lauren J. Wolongevicz, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Aja Oishi, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**VARGAS, Judge.**

**{1}**     Defendant appeals the district court's denial of his motion to dismiss probation revocation proceedings, arguing that the district court's decision that Defendant was a fugitive under NMSA 1978, Section 31-21-15(C) (1989, amended 2016), was not supported by evidence in the record. We agree, and because the district court's decision was not supported by evidence, the district court had no authority to extend Defendant's probation and was therefore without jurisdiction to revoke Defendant's

probation after his probation had ended. We reverse the district court's denial of Defendant's motion to dismiss and remand for the district court to vacate its revocation of Defendant's probation. As this is a memorandum opinion, we limit our recitation of the facts to those necessary to our analysis of the appellate issues.

**BACKGROUND**

**{2}** On March 3, 2014, Defendant Larson Brown, pleaded guilty to one count of aggravated assault with a deadly weapon and one count of child abuse. Defendant was sentenced to three years of incarceration followed by two years on parole. The district court partially suspended Defendant's sentence and entered an order placing him on supervised probation for two years, eight months, and twenty-nine days, so that Defendant's probation was scheduled to end December 16, 2016.

**{3}** On April 1, 2014, Defendant was arrested on new charges, and the State sought to revoke Defendant's probation, filing a supplemental information to enhance Defendant's sentence based on his status as a habitual offender. Defendant failed to appear at the arraignment for the new charges, and on April 30, 2014, the district court issued a bench warrant for Defendant's arrest. Defendant was eventually arrested more than a year later on July 1, 2015.

**{4}** Once returned to custody, Defendant pleaded to the additional charges that gave rise to the probation violation, but rather than sentence Defendant immediately, the district court ordered that Defendant undergo a diagnostic evaluation with the Department of Corrections. The district court later held a sentencing hearing on November 9, 2015, during which it specifically sought clarification regarding the end-date for Defendant's probation. The State represented to the district court that Defendant's probation would expire February 17, 2018, and explained that that date included "dead time." Neither Defendant nor the district court questioned that date or the meaning of "dead time." Later during that hearing, parties expressed some confusion regarding Defendant's prior convictions, and as a result, the district court refrained from sentencing Defendant and continued the hearing to allow the parties to gather additional information relevant to sentencing. While awaiting the sentencing hearing, the State filed a sentencing memorandum stating that "there [wa]s dead time while Defendant had absconded[,]" and requesting that the district court incarcerate Defendant "for the mandatory prison time that he has left . . . after the enhancement and not giving credit for absconder time."

**{5}** When the parties met on December 21, 2015, for the second sentencing hearing, they agreed that Defendant would attend an inpatient treatment program and that Defendant would be placed back on probation after completing the program. The probation officer informed the district court that the end date for Defendant's probation was December 16, 2016, but the State disagreed, stating it believed the end date "with dead time" was February 17, 2018. Without resolving these discrepancies, the district court stated, "at any rate, he needs to finish the program before I put him back on supervised probation" and brought the hearing to a close. On January 15, 2016, the

district court filed an order continuing probation, found that Defendant failed to comply with a substantial condition of his probation, required that Defendant enter and complete inpatient treatment "as a special condition of continuing probation[,]" and stated that Defendant's probation was to be "continued until February 17, 2018." Defendant signed an amended order of probation that identifies February 17, 2018, as the end-date for Defendant's probation in a hand-written amendment to the otherwise typed document.

{6}     When Defendant was arrested again in October 2016, the State filed a second motion to revoke probation and enforce the plea agreement as well as a supplemental information seeking a habitual offender enhancement. On December 8, 2016, Defendant filed a motion to dismiss the State's motion to revoke probation, arguing that the State could not extend his probation beyond December 16, 2016, because it had failed to demonstrate Defendant was a fugitive according to Section 31-21-15(C) and seeking a discharge from probation. The district court held a hearing on December 20, 2016, to decide Defendant's motion to dismiss as well as the State's probation revocation motion, but because neither party was prepared to argue whether Defendant had waived his objection to the district court's implicit finding that Defendant was a fugitive, the district court reserved its ruling on that matter and allowed the parties to "supplement the record." Defendant then entered a conditional plea to the probation violation, reserving his right to appeal the district court's decision on the motion to dismiss.

{7}     On December 23, 2016, the State submitted a supplemental memorandum regarding the fugitive issue, argued that prior references to "dead time" were sufficient to place the fugitive matter before the district court and alert Defendant to the issue, and attached exhibits describing the State's efforts to locate Defendant during the time between the issuance of the warrant in April 2014 and Defendant's arrest in July 2015. The exhibits consisted of an email from a probation officer drafted December 21, 2016, [1] a copy of a probation questionnaire that Defendant completed, and a printout of a computer log. [2] In total, the State's exhibits contained evidence of one attempt to contact Defendant at the location he listed on the probation questionnaire on April 15, 2014, fifteen days prior to the district court's issuance of the bench warrant, and two failed attempts to contact him on December 12, 2014.

{8}     In January 2017 the district court concluded that the issue of whether Defendant was a fugitive should have been argued earlier in the proceedings, and that as a result, Defendant had waived his objection to the district court's implicit finding that Defendant was a fugitive. The district court's order reads: "At the hearings on the prior motion to

1The email reads: "[N]otes from our CMIS system list[] the home visits on 04-15-14, when I was looking for him, and 12-12-14 when the US Marshall's operation was looking for him as part of the fugitive task force. The warrant was issued by the [c]ourt on 04-30-14 and he was arrested on it on 07-01-15."
2The log contained three entries: (1) on April 15, 2014, authorities made contact with Defendant's aunt at the listed address and she informed them Defendant was not there; (2) on December 12, 2014, authorities made contact with current resident of Defendant's listed address, who informed them Defendant did not reside at that address; (3) on December 12, 2014, authorities investigated another possible address for Defendant, but determined that he was not there.

revoke probation proceedings . . . counsel for the State specifically referred to 'dead time' and Defendant was given the opportunity to contest any dead time or fugitive status issues but Defendant failed to raise that issue at that time." As a result, the district court concluded, "Defendant waived his claim to contest fugitive status issues" and denied Defendant's motion to dismiss. Defendant appeals.

## DISCUSSION

**{9}** Defendant argues that the district court erred in concluding he waived his right to contest the implicit finding that he was a fugitive. The State concedes that Defendant did not waive his argument on this issue. *See State v. Jimenez*, 2004-NMSC-012, ¶¶ 10-11, 135 N.M. 442, 90 P.3d 461 (concluding the defendant had no notice that the court was considering whether he was a fugitive, had no opportunity to object to the implicit ruling at the time it was made, and was entitled to argue the matter for the first time on appeal). As the parties are in agreement that waiver did not occur, we are left to decide a single issue: whether the district court's implicit determination that Defendant was a fugitive, which allowed the district court to extend the length of Defendant's probation by withholding credit for time served on probation, was supported by the evidence. *Cf. id.* ¶¶ 9-10 (concluding that the defendant did not have sufficient notice that the district court was considering fugitive issue where no reference to Section 31-21-15(C) or "fugitive" was made during proceedings and allowing the defendant to raise fugitive issue for the first time on appeal).

**{10}** We review the district court's determination that a defendant is a fugitive for substantial evidence. *See, e.g.*, *Jimenez*, 2004-NMSC-012, ¶ 14; *State v. Apache*, 1986-NMCA-051, ¶ 15, 104 N.M. 290, 720 P.2d 709. "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Jimenez*, 2004-NMSC-012, ¶ 14 (internal quotation marks and citation omitted). Under a substantial evidence review, "we . . . resolve all disputed facts in favor of the [district] court's decision, indulge all reasonable inferences in support of that decision, and disregarding all inferences to the contrary." *Id.* (internal quotation marks and citation omitted); *Apache*, 1986-NMCA-051, ¶ 16.

## I.  Evidence of Fugitive Status

**{11}** A defendant is entitled to credit for all the time served on probation unless the district court determines that the defendant was a fugitive. Section 31-21-15(B)-(C) (1989) ("[T]he court may impose any sentence which might originally have been imposed, but credit shall be given for time served on probation. . . . If it is found that a warrant for the return of a probationer cannot be served, the probationer is a fugitive from justice."); *Jimenez*, 2004-NMSC-012, ¶ 8 (stating that Section 31-21-15(B) and (C) "indicate that all time served on probation shall be credited unless the defendant is a fugitive" (internal quotation marks and citation omitted)). "The state has the burden of proving that a defendant is a fugitive[.]" *State v. Thomas*, 1991-NMCA-131, ¶ 9, 113 N.M. 298, 825 P.2d 231, *overruled on other grounds by Jimenez*, 2004-NMSC-012, ¶ 11. To prove the defendant is a fugitive, the state must show that "(1) it unsuccessfully

attempted to serve the warrant on the defendant[;] or (2) any attempt to serve the defendant would have been futile." *Jimenez*, 2004-NMSC-012, ¶ 8. In addition, "the state must ordinarily prove that it issued a warrant for the [defendant's] arrest and entered it in the National Crime Information Center (NCIC) database in order to support a finding of fugitive status." *State v. Neal*, 2007-NMCA-086, ¶ 31, 142 N.M. 487, 167 P.3d 935; *see Jimenez*, 2004-NMSC-012, ¶ 15 (noting that the state's failure to enter a warrant into the NCIC database "weighs heavily against a finding that the [s]tate acted with due diligence"). "At a minimum, the state must present some evidence that raises a reasonable inference that the warrant could not be served with reasonable diligence." *Neal*, 2007-NMCA-086, ¶ 34 (internal quotation marks and citation omitted).

**{12}** The parties agree that the district court made an implicit finding that Defendant was a fugitive when it filed an order on January 15, 2016, extending Defendant's probationary term from December 16, 2016, to February 17, 2018. While the district court was permitted to make an implicit finding regarding Defendant's status as a fugitive, that decision must have been supported by the evidence. *See Thomas*, 1991-NMCA-131, ¶ 12 ("The lack of an explicit, expressed finding that [the] defendant was a fugitive is not, by itself, reversible error."); *see also Jimenez*, 2004-NMSC-012, ¶ 14 ("[W]e must examine the record to determine whether there was a sufficient showing to support the district court's implicit finding[.]" (alteration, internal quotation marks, and citation omitted)). As of January 15, 2016, when the district court made its implicit finding, the State had provided no evidence relevant to a determination of Defendant's fugitive status. The State did not submit any evidence that the warrant for Defendant's arrest had been entered into the NCIC database, that there had been any attempts to serve the warrant on Defendant, or that any such attempts would have been futile. We therefore conclude that the district court's implicit finding that Defendant was a fugitive was not supported by substantial evidence.

**{13}** On appeal, the State points to the three exhibits attached to its supplemental memorandum filed on December 23, 2016, as evidence to support the district court's implicit finding regarding Defendant's fugitive status that was made nearly a year earlier on January 15, 2016. To the extent that the State attempts to characterize the district court's decision on Defendant's motion to dismiss as a determination of Defendant's fugitive status, the State's argument is unpersuasive. The district court's decision to deny Defendant's motion to dismiss was not a determination of Defendant's fugitive status, but rather a reiteration of its earlier implicit decision that Defendant was a fugitive and its rejection of Defendant's request to reconsider that determination. By concluding that Defendant had waived his challenge to the implicit finding that he was a fugitive, the district court declined the parties' invitation to revisit the merits of its earlier decision regarding Defendant's fugitive status. Because the district court declined to revisit the merits, the new evidence introduced by the State in December 2016 was never considered by the district court in determining Defendant's fugitive status and therefore could not have supported the district court's January 2016 finding that Defendant was a fugitive.

**{14}** The State asserts that the fact that it presented no evidence until after the district court had made its implicit finding is "irrelevant" because Section 31-21-15(C) "does not require that the State present evidence of a defendant's fugitive status." We disagree. While the statute does not explicitly place the burden of proof on the State or describe the evidence necessary to prove a defendant is a fugitive, the State's assertion that it was under no obligation to prove Defendant's fugitive status is contrary to all relevant caselaw on this subject.

**{15}** Our Supreme Court has explicitly required that even implicit findings regarding a defendant's fugitive status be supported by substantial evidence and has placed the burden of providing that evidence squarely on the State. *See Jimenez*, 2004-NMSC-012, ¶ 14; *Neal*, 2007-NMCA-086, ¶ 30 ("The [s]tate bears the burden of proving that the defendant is a fugitive."); *see also State v. Hinojos*, 2014-NMCA-067, ¶ 11, 327 P.3d 1120 (same). In *Jimenez*, our Supreme Court stated that "[a] defendant is entitled to credit for any time on probation, *unless the [s]tate can show* either (1) it unsuccessfully attempted to serve the warrant on the defendant[;] or (2) any attempt to serve the defendant would have been futile[,]" rendering a defendant a fugitive. 2004-NMSC-012, ¶ 8 (emphasis added). The State has pointed to nothing to persuade us that the burden belongs elsewhere or that we can depart from settled precedent. *See, e.g.*, *Padilla v. State Farm Mut. Auto. Ins. Co.*, 2003-NMSC-011, ¶ 7, 133 N.M. 661, 68 P.3d 901 ("The principle of stare decisis dictates adherence to precedent.").

**{16}** The State also argues that its references to Defendant absconding from supervision and to "dead time" alerted Defendant to the fact that the State intended to allege that Defendant was a fugitive and extend his probationary term. This argument, however, is relevant to whether Defendant was put on notice of the State's theory of the case, rather than the question on appeal—whether the State met its burden to provide substantial evidence that Defendant was a fugitive according to Section 31-21-15(C). As our resolution of this appeal does not require that we consider whether use of the phrase "dead time" notified Defendant that his fugitive status was an issue in this case, we do not address it.

## II.    Remedy

**{17}** Having determined that the district court erred in finding Defendant to be a fugitive within the meaning of Section 31-21-15(C), we now consider the proper remedy for that error. The State argues that we should remand for the district court to determine the proper credit to be given against Defendant's sentence. *See, e.g.*, *Jimenez*, 2004-NMSC-012, ¶ 16 (concluding that the proper remedy where evidence did not sufficiently demonstrate that the defendant was a fugitive under Section 31-21-15(C) was "to remand to the district court for a hearing limited to the issue of the proper credit to be given against the sentence" (citing *Thomas*, 1991-NMCA-131, ¶ 21 (same))). Defendant, on the other hand, asks that we vacate his sentence, arguing that without the authority to extend Defendant's probation, the district court lacked jurisdiction to revoke his probation. Specifically, Defendant argues that because the district court's implicit finding that Defendant was a fugitive was not based on any evidence, the district

court was without any authority to extend Defendant's probationary period beyond December 16, 2016, and the district court was therefore acting without jurisdiction when it revoked his probation in January 2017. *See State v. Ordunez*, 2012-NMSC-024, ¶ 9, 283 P.3d 282 (stating rule that courts are generally deprived of jurisdiction to revoke probation or impose sanctions for probation violations once the probationary period has expired, even when violations occur and revocation motions are filed before probation expires).

**{18}** Section 31-21-15(C) allows a court to extend jurisdiction over probation proceedings beyond the original term only where it has found the defendant to be a fugitive from justice. Per our discussion above, the district court's determination that Defendant was a fugitive is without evidentiary support and cannot stand. Without its determination that Defendant was a fugitive, the district court had no authority to extend Defendant's probation beyond December 16, 2016, *see Jimenez*, 2004-NMSC-012, ¶ 11, and without extending Defendant's probationary period, the district court had no jurisdiction over Defendant's probation after December 16, 2016. *See, e.g.*, *Ordunez*, 2012-NMSC-024, ¶ 9. Because the improperly extended term of probation was the vehicle by which the district court retained jurisdiction to revoke Defendant's probation, once the State failed to prove that Defendant was a fugitive, the district court lost the authority to extend the probationary period and lost jurisdiction to revoke probation on December 16, 2016. *See State v. Sosa*, 2014-NMCA-091, ¶ 12, 335 P.3d 764 (discussing memorandum opinion where the facts did not support a finding that probationer was a fugitive, there was no basis for denying probationary credit for the time and the trial court was deprived of jurisdiction "for anything but the already-decided hearing on his fugitive status").

**{19}** Generally, a district court loses jurisdiction over a probationer once the probation term has ended, *Ordunez*, 2012-NMSC-024, ¶ 9, but "Section 31-21-15(C) allows a court to exercise jurisdiction over a probationer after the expiration of the probationary term *for the limited purpose of determining fugitive status*[.]" *Sosa*, 2014-NMCA-091, ¶ 14 (emphasis added). As such, the district court may have had jurisdiction over Defendant after December 16, 2016, for the narrow purpose of determining his fugitive status. *See id.* However, as discussed above, the district court's decision to deny Defendant's motion to dismiss was not a determination of Defendant's fugitive status, but rather a refusal to consider the merits of Defendant's fugitive status. Because the district court revoked Defendant's probation after December 16, 2016, it acted without jurisdiction. We therefore reverse the district court's denial of Defendant's motion to dismiss and remand to the district court with instructions to vacate the order revoking probation and committing Defendant to the department of corrections.

**CONCLUSION**

**{20}** Reversed and remanded.

**{21}** **IT IS SO ORDERED.**

**JULIE J. VARGAS, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**ZACHARY A. IVES, Judge**